Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7543 | DATE | 10/21/2003 |
| CASE TITLE | Dilworth vs. LaSalle Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion and order, plaintiff's motion for summary judgment is denied [18-1]. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
|   | No notices required. | | number of notices | Document Number |
|   | Notices mailed by judge's staff. | | OCT 2 2 2003 | |
|   | Notified counsel by telephone. | | date docketed | 23 |
|   | Docketing to mail notices. | | | |
|   | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
|   | Copy to judge/magistrate judge. | 03 OCT 21 PM 4:37 | | |
|   | | FILED FOR DOCKETING | date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAURIA DILWORTH, | ) | **DOCKETED** |
| | ) | OCT 2 2 2003 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 7543 |
| | ) | |
| LASALLE-CHICAGO 24 HOUR CURRENCY | ) | Judge John W. Darrah |
| EXCHANGE, INC.; GEORGE CERDA; and | ) | |
| BARRY SHACK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tauria Dilworth, filed a four-count complaint against Defendants, alleging false imprisonment (Count I), intentional infliction of emotional distress (Count II), violation of the Employee Polygraph Protection Act ("EPPA") (Count III), and wrongful discharge (Count IV). Presently before the Court is Dilworth's Motion for Summary Judgment as to Count III.

## BACKGROUND

Dilworth is a former employee of LaSalle-Chicago 24 Hour Currency Exchange, Inc. (Plaint.'s 56.1(a)(3) Statement ¶ 2). LaSalle is engaged in the business or service of, and providing facilities for, cashing checks, drafts, and money orders for a fee or service charge. (Id., ¶ 4). Barry Shack is the owner and operator of LaSalle. (Id., ¶ 6). George Cerda is employed as a manager for LaSalle. (Id., ¶ 7).

On August 30, 2002, Cerda worked the 3:00 p.m.-to-11:00 p.m. shift at LaSalle. (Plaint.'s 56.1(a)(3) Statement ¶ 14). Tellers working the same shift included Dilworth, Felipe Bueno, Tanisha Bell, Maria Sotelo, and Christina Galvan. (Id., ¶ 14). When Cerda first arrived at LaSalle



on August 20, 2002, Cerda made sure that everything was operating properly by determining whether the tellers were at their stations, that the tellers had sufficient cash for the day, and that everyone arrived to work on time. (Id., ¶ 15).

At 11:00 p.m., Dilworth was relieved of her duties, as usual, and left LaSalle to go home. (Plaint.'s 56.1(a)(3) Statement ¶ 17). As required by company policy, Dilworth balanced her cash drawer at the end of her shift. (Def.'s 56.1(b)(3) Statement ¶ 34).

Sometime after 11:00 p.m., Cerda discovered a $2,000 shortage at LaSalle. (Plaint.'s 56.1(a)(3) Statement ¶ 18). Cerda traced the $2,000 shortage to Dilworth's cash drawer because every other teller reflected the proper amount of cash. (Def.'s 56,1(b)(3) Statement ¶ 35). Cerda had given Dilworth $2,000 earlier that day. Cerda recalled placing the $2,000 in Dilworth's hands, and he saw her place the $2,000 in her cash drawer. (Id., ¶ 36). After discovering the shortage, Cerda telephoned Dilworth and directed her to return to LaSalle. (Plaint.'s 56.1(a)(3) Statement ¶ 19). Cerda also called Sherry Cooks, another manager for LaSalle, and asked her to come to LaSalle. (Id., ¶ 21).

Dilworth and Cooks arrived at LaSalle at approximately 11:45 p.m. (Plaint.'s 56.1(a)(3) Statement ¶ 22). When Dilworth arrived at LaSalle, Cerda explained to her that her drawer was short the $2,000; and Cerda explained how he made the determination that her drawer was short the money. Dilworth said nothing in response. Thereafter, Cerda explained the problem again to Dilworth. After the second explanation, Dilworth stated that she did not know what happened to the money. (Def.'s 56.1(b)(3) Statement ¶ 37).

Shortly thereafter, Cooks told Dilworth to go into LaSalle's bathroom with her. The bathroom was used for private conferences because it was the only private room in the currency

2

exchange. (Def.'s 56.1(b)(3) Statement ¶ 38). The LaSalle bathroom is approximately 5 feet by 7 feet and has no windows. (Plaint.'s 56.1(a)(3) Statement ¶ 26).

While in the bathroom, Dilworth had access to a telephone, which she used to call her mother and her aunt. Dilworth spoke with relatives on the telephone for over two hours. (Def.'s 56.1(b)(3) Statement ¶ 39). Eventually, Cerda drafted a statement for Dilworth to sign. Cerda spoke with Dilworth's mother via the telephone. After speaking with Dilworth's mother, Cerda revised the statement to conform with Dilworth's mother's wishes. Dilworth's mother suggested that Dilworth take a lie detector test. (Def.'s 56.1(b)(3) Statement ¶ 40). Cerda informed Dilworth to sign the statement before she could leave LaSalle. (Plaint.'s 56.1(a)(3) Statement ¶ 28). The final statement read:

> I, Tauria Dilworth, agree to make restitution to LaSalle-Chicago Currency Exchange in the amount of $2,000 dollars for the loss of funds during my tour of duty on August 20, 2002. I further agree to submit to a polygraph exam surrounding my responsibility of the said lost funds. Upon verification of the results of the exam, my employment with the currency exchange will be determined. If this agreement is forfeited, the employment of Sherry Cooks will be terminated. I affirm that this is in my interest to follow up according to the terms and conditions of the above-mentioned statements. I have two weeks to pay the $2,000 dollars in full.

(Id., ¶ 29). Cerda spoke with Shack twice during the time that Dilworth was in the bathroom. Cerda read the statement to Shack, who agreed to the wording of the statement. (Id., ¶ 31).

After signing the statement, Dilworth left LaSalle. Dilworth was in the bathroom until approximately 5:00 a.m. When she left, she left her store keys at LaSalle. Cerda believed that Dilworth had quit in light of her leaving her keys at the store. (Plaint.'s 56.1(a)(3) Statement ¶ 27; Def.'s 56.1(b)(3) Statement ¶ 41).

3

"Subsequently, Defendants arranged for Dilworth to meet with Reed & Associates, an investigator firm, for further investigation. Defendants used that firm to conduct integrity interviews. Defendants left the decision to use a polygraph examination up to the investigators. The investigators would determine whether a polygraph test was necessary and, if so, would administer the test. (Def.'s 56.1(a)(3) Statement ¶ 42). While at LaSalle, Dilworth was informed that she would be given an integrity interview by the investigators. (Id., ¶ 43).

Several days later, Cerda had a telephone conversation with Dilworth. Cerda asked Dilworth if she went to Reed & Associates; Dilworth informed Cerda that she had not. Cerda then told Dilworth that he was not happy with her work performance and that she was not welcome back. (Plaint.'s 56.1(a)(3) Statement ¶¶ 31-33; Def.'s 56.1(b)(3) Statement ¶ 44). Dilworth had previously been reprimanded for tardiness. (Def.'s 56.1(b)(3) Statement ¶ 46).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Dilworth seeks summary judgment on her EPPA claim. The EPPA prohibits an employer to require or request any employee or prospective employee to take or submit to a lie detector test.

*See* 29 U.S.C. § 2002(1). Employers are also prohibited from discharging an employee for refusing or failing to take a lie detector test or on the basis of the results of a lie detector test. *See* 29 U.S.C. § 2002(3). However, an employer may request an employee submit to a lie detector test if:

> (1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft ...
>
> (2) the employee had access to the property that is the subject of the investigation;
>
> (3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and
>
> (4) the employer executes a statement, provided to the examiner before the test, that –
>
> (A) sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,
>
> (B) is signed by a person (other than a polygraph examiner) authorized to legally bind the employer,
>
> (C) is retained by the employer for at least 3 years, and
>
> (D) contains at a minimum –
>
> (i) an identification of the specific economic loss or injury to the business of the employer,
>
> (ii) a statement indicating that the employee had access to the property that is the subject of the investigation, and
>
> (iii) a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident under investigation.

29 U.S.C. § 2006(d). These exemptions do not apply "if an employee is discharged, disciplined, denied employment or promotion, or otherwise discriminated against in any manner on the basis of

the analysis of a polygraph test chart or the refusal to take a polygraph test, without additional supporting evidence. The evidence required by such subsection may serve as additional supporting evidence." 29 U.S.C. § 2007(1).

Dilworth first argues that Defendants did not have a reasonable suspicion that she was involved in the loss of the $2,000. However, genuine issues of material fact exist whether Defendants had a reasonable suspicion that Dilworth took the $2,000. Dilworth had the only drawer that did not balance on the night in question, and Cerda recalled giving Dilworth $2,000 in cash at one point during her shift.

Dilworth argues that "mere access to stolen items" is, as a matter of law, an insufficient basis for reasonable suspicion. Dilworth cites to *Blackwell v. 53rd Ellis Currency Exchange*, 852 F. Supp. 646 (N.D. Ill. 1994) (*Blackwell*), for such proposition. However, that disposition was vacated by *Blackwell v. 53rd Ellis Currency Exchange*, 873 F. Supp. 646 (N.D. Ill. 1994). In addition, in the instant case, Dilworth not only had access to the missing money; but her drawer was the only drawer that was short and was short the amount of cash that Cerda recalls handing directly to Dilworth. Accordingly, the facts of this case are distinguishable from *Blackwell*.

Dilworth also argues that the August 31, 2002 statement that she signed violates Section 2006 (d)(4). In response, Defendants argue that the August 31, 2002 statement did not violate Section 2006 (d)(4) because the statement was not a notice pursuant to the statute.

Section 2006(d)(4) requires the employer to execute a statement and provide that statement to the employee "before the [polygraph] test". 29 U.S.C. § 2006(d)(4). Section 2006 then identifies, with particularity, what is required in the statement. The statement required under Section 2006(d)(4) "must be received by the employee at least 48 hours, excluding weekend days and

holidays, prior to the time of the examination." 29 C.F.R. § 801.12(g)(2).

In the instant case, a statement was prepared and signed by Dilworth concerning the loss of the $2,000 and her willingness to take a polygraph exam. The statement does not reference the applicable statute and does not indicate when or where the polygraph exam was to be administered. It is also undisputed that while the statement does not mention Reed & Associates, Dilworth was aware that she was to contact Reed & Associates. Cerda also testified that Reed & Associates was to conduct an investigation and then determine whether a polygraph exam was required. It is undisputed that Dilworth never took a polygraph exam; but it is not clear whether a polygraph test was ever actually scheduled and, if so, when it was to take place.

When reviewing all of the above evidence and the reasonable inferences that may be drawn from the evidence in the light most favorable to the Defendants, genuine issues of material fact exist as to: (1) whether the Defendants were required to present Dilworth with a statement pursuant to Section 2006; (2) if so, when was such a statement due; and (3) whether the August 31, 2002 statement was the statement required by Section 2006.

Lastly, Dilworth argues that pursuant to Section 2007(a)(1), the Section 2006(d) exemption does not apply to Defendants.

As stated above, the Section 2006(d) exemption does not apply if the employee is discharged or disciplined on the basis of the analysis of a polygraph exam chart or the refusal to take a polygraph exam, "without additional supporting evidence". Here, there are genuine issues of material fact whether there was "additional supporting evidence" based on the undisputed facts that Dilworth's drawer was short $2,000, Dilworth was the only employee whose drawer did not balance, and Cerda specifically recalls handing $2,000 to Dilworth during her shift.

7

Furthermore, there are genuine issues of material fact whether Dilworth's employment was terminated due to her failure to take a polygraph exam or because of her overall job performance.

## CONCLUSION

For the reasons stated above, Dilworth's Motion for Summary Judgment is denied.

Dated: October 21, 2003

JOHN W. DARRAH
United States District Judge